May it please the Court? You may proceed, Counsel. Your Honor, my name is Deanne Kaspers and I'm here today on behalf of the appellant Camarie Mangum. Essentially there are three issues before the Court today, two of which arise under Section 1983 and one of which arises under the Fair Debt Collection Practices Act. The basic facts are that Camarie Mangum worked for the City of Pocatello Police Department. She was a dispatcher. There became an issue as to whether she had some issues with debts that needed to be collected. And essentially her supervisor who was within the City Police Department went to debt collection agencies and was able to obtain her confidential and private information about the debt collection activities that occurred. The District Court dismissed the constitutional violation claim under 1983 under U.S. v. Miller. We believe that that was an error. What the District Court decided was that a check was a negotiable instrument and that once you place it into the stream of commerce, you have no privacy protection in that check. And we think that is directly an error because, number one, it assumes that when Ms. Mangum wrote this check, that she not only assumed that the merchant would have that information, but she had to assume that then it would be turned over to, back to her bank and denied for sufficient funds and then turned over to a debt collection agency who would then give that information to her employer. She couldn't assume anything. She had to assume that once she put a check in the stream of commerce, he could have endorsed it to me, I could have endorsed it to Joe Blow, Joe Blow could have endorsed it to Billy Rowe, Billy Rowe could have given it to the bank, the bank then sent it back all through all those channels so it came back to the first person who got dinged with her false check. And that person could do whatever he wanted with it. There's nothing in the law that says that check doesn't remain a negotiable instrument in the hands of the person who was defrauded by being tapped in the hand with it. And that person could turn the check over to the newspaper, to a debt collection agency, to anybody else in the world. And that's basically what the Supreme Court cases stand for, it seems to me. I just don't understand the point that somehow she retained some kind of privacy right in this negotiable instrument she sent out floating around the world. If you look at the assumption of the risk cases by the Supreme Court and the other court of appeals, what they've held is that you don't have a privacy interest as between the party with whom you have voluntarily conveyed that information. It's that invited informer doctrine or the assumption of the risk. And the issue is, would she have a right of privacy as against the merchant that she issued that check to? No. But does she have a right of privacy as to the whole world? Yes. And the merchant can't then give it to somebody else? And if the merchant gives it to somebody else, she has a right of privacy that attaches to it when he gives it to somebody else, and the somebody else can't do anything with it, because she has a right of privacy now. So somebody else has to sit on that and keep it private. Is that your point? Well, I think it is for now. The merchant gives it to me and says, or to a lawyer, lawyer, go collect this. But, whoops, she now has a right of privacy on that check. Is that your position? It is. And one of that is based on Katz. If you go back to the Katz case, and if you'll recall that, that was the defendant was in a phone booth, and he was voluntary conveying information to a third party, and the government placed an eavesdropping device essentially on the outside of that phone booth. I understand what you mean. Thank you. And essentially you have to go that far. It doesn't seem to me that we have the Fair Debt Collection Practice Act, which I'm not persuaded gives you a claim under that against the city, but it does evidence that there is a congressional recognition that collection information is a sufficiently private kind of information that ought not to be disclosed to unauthorized persons. What troubles me about this case is that this came about, as I understand, the collection agency position is that they thought this was a police investigation where they had to turn it over, and that but for that they would not have known. And the city, the police department, is obtaining this not in the stream of commerce, but as part of an investigation. And I don't understand why, once it goes in the stream of commerce, you have to argue that, well, the privacy attaches all the way down the road. It seems to me it's privacy as to whom. So what's your response on the police department getting access to it? You're right. I think the difference between those two is whether we're talking about a constitutional claim versus a Federal right claim. And I agree with you. I'm talking about a constitutional claim. Okay. And I agree that one of the first things that we have to respond is whether there's a legitimate expectation of privacy. And I think that's what you're referring to, is that we clearly have a congressional intent that this information is private. But what's the constitutional basis for it? The constitutional basis under the Fourth and Fourteenth Amendments for that right of privacy on informational privacy that this Court has recently looked at and considered in the Nelson case. Yeah, but that didn't rely on the Fourth Amendment. It distinguished the Fourth Amendment. It didn't rely on the Fourth. It relied on the Fourteenth Amendment on that informational privacy. However, I will say that I think this issue is very confusing within the case law. If you go back to the Ortega case, which is relied on the Fourth Amendment, which is really an informational privacy case by the Supreme Court, it appears that the courts have somewhat used both the Fourth Amendment and the Fourteenth Amendment interchangeably for that informational privacy case. But one of the issues that I had is when you put that check into the stream of commerce, if we can call it that, once it comes back for non-sufficient funds, the character of that information completely changes. And when it goes to a debt collection, it becomes a debt. And, in fact, this Court has recognized that it is a check that has been returned for non-sufficient funds is a debt. And the character of that information completely changes, and we think that does provide additional protections when that event happens based on those cases that have previously been decided. In addition to the constitutional claims, we believe that the Court erred by dismissing the 1983 claim under for essentially a Federal right. What the Court held in its decision was that because Ms. Mangum could not proceed directly against the city of Pocatello under the Fair Debt Collection Practices Act, therefore, she did not have a 1983 claim. And we believe that is clearly error. It's not whether she has a claim as against the city of Pocatello, but it's whether she has a Federal expressed right. And as Your Honor has indicated, it seems clear from Congress that in both the Fair Debt Collection Practices Act and the FDR and the Fair Credit Reporting Act that Congress has evidenced that this type of information, someone is entitled to a right. But under the Federal Debt Collection Practices Act, the city is not a debt collector, is it? No. So it's not no claim can run against the city under that particular provision? It couldn't under the Fair Debt Collection Practices Act, but it could under 1983. And that's one of the issues. We have to look to see if there's a Federal right that's protected. Now, that is a rebuttable presumption, and the city could come back and argue that there was a statutory scheme set up by Congress that would evidence that Congress did not intend that Federal right to be available through 1983. But what triggers that statute? Does the debt information from the collection agency trigger the statute? For a claim under that? Right. What triggers that is some kind of disclosure of debt collection activities or debt collection efforts under that claim, at least as I understand it. You've discussed the claims against the city. What about the claim against the collection agency on the statute of limitations? We believe that the statute of limitations is still subject to the discovery rule that has been used by the Ninth Circuit repeatedly. That brings, of course, up the TRW case that comes out of the Supreme Court. It's clear from the Supreme Court's decision, however, that it decided, it did not decide whether a general discovery rule still exists. It acknowledged that the circuits generally apply one, but it is an open decision as to whether that still applies. The case out of the District of Colorado, I think, analyzed the TRW case very well. It basically decided that the Supreme Court had not answered that question, and within the Tenth Circuit, that the Federal discovery rule still applies. And I think that is the case in this circuit as well. All right. For the question that we mentioned in our special order, is this a jurisdictional the statute of limitations a jurisdictional or not? I don't believe it is. And if you look at the Clark decision out of the Eastern District of Washington, I think it provides analysis that I couldn't probably do any better on. Essentially, if there's a dispute between the code and the statutes at large, the statutes at large govern. That court specifically went back to the statutes at large to see if there was any kind of indication that this was jurisdictional and jurisdiction that doesn't exist there. So I think that analysis is very well done and really answers the question that it is not. One of the issues that's really unique about the claim that we have under the Fair Debt Collection Practices Act is that I could find no case law where you have an oral or written disclosure that is not given to the consumer. If you look at the cases, generally what happens is they receive either a Dunning letter, and the question for the court is when should the statute of limitations begin to run, when the letter was mailed or when it was received. And comparably, then the cases look to when there's a collection action and whether or not that violated the Fair Debt Collection Practices Act. And the courts look to should it begin to run when the case was filed or when it was served. The problem that we have here is Ms. Mangum was never informed when they made the disclosure because it was all done without behind her back. The first time she ever learned that any of this had been disclosed was on December 15th when she was told by her supervisor. If the discovery rule applies, that's when the statute starts, correct? And they filed, barely, but filed within the year after that. Yes. Right? Okay. Yes. It would be timely, but like you say, just barely the day before. But when was the triggering violation here? Wasn't it a week before when the actual disclosure first took place? Well, I think that's the real question is when does the violation occur? And there's no doubt the statute of limitations is phrased in that way when the violation occurs, and that's the struggle between the circuits. But let's be sure. The violation in this case occurred on, what, the 7th, 8th? What was the date? I think it was the 7th. All right. The 7th of December. But she didn't find out about it until the 15th. Right. And that's the real question is do we consider the violation occurred when the event took place or when she knew about it? And that's the struggle with the circuits. Is it service or is it filing? Is it mailing? Is it receipt? And in this case, because we don't have either one of those, we have to determine was it when they actually did it or when she learned about it. But the one thing I would point out is that in the cases that have decided this, every court has said it has to be an ascertainable date to the consumer. Well, let's suppose we thought that your client was entitled to equitable tolling. Would that be another basis on which to do it without having to decide the statute of limitations question? It would. Clearly, if the court were to decide it was jurisdictional, equitable tolling would not apply. Assuming the non-jurisdictional issue. I believe in this situation it would because I don't know what else we could have done. We tried to find the information out. She gets the interval between the time that, assuming we say it's triggered before she had the actual notice, but because of equitable tolling it doesn't run, does that solve the problem for the statute of limitations? Yes, Your Honor, I believe it does. Because she filed her claim, what, within the five day or whatever the interval was? Yes, exactly. And we think all of the basis for equitable tolling exists in that she was very diligent in trying to find out that information. And until the Supreme Court or this Court decides that the discover rule no longer applies, I think that's tied with that equitable tolling. What do you mean when you say she was diligent in trying to find out the information? I thought what happened was the incident occurred. She didn't know about it. She gets a letter from her supervisor, from the investigating officer, come talk to me. She walks in and talks to him, and he says, I've got these checks. What happened is he found out then that she'd been, somehow he got no checks, right? Well, on the 9th, he told her that she was being investigated. On the 15th, then he tells her what he's done. But at that point, still, she doesn't know the details of any of those conversations. And that, and we couldn't obtain that information. We tried to get the tape of the investigation from the Pocadillo Police Department, and unfortunately, the tape was inaudible. So we did everything we could to try to determine that date. But it wouldn't matter if you were protected up to the date that she was told, whether you call that discovery rule, equitable tolling, whatever. It wouldn't matter. You filed within that time, correct? Right. Exactly. Thank you, counsel. Your time has expired. We'll hear from the collection service. If it pleases the Court, my name is Blake Hall, and I do not represent the collection agency. I represent the city of Pocadillo. The collection agency is represented by Todd Erickson, who is not here. And I don't know why, and I'm not able to explain to the Court his absence. The issue that you've asked in your special order to address, dealing with the issue of whether this is jurisdictional or procedural, really doesn't apply to my client. It does apply to Monaville Collection Agency. But inasmuch as you put forth the request that all the parties be prepared to discuss the issue, I have looked at the matter briefly and would just suggest to the Court that TRW was an effort by the United States Supreme Court to instruct the Ninth Circuit that the discovery rule or the issue of the presumption that the Supreme Court or that the Ninth Circuit was applying with regard to whether these federal statutes are jurisdictional or procedural should be more often jurisdictional rather than procedural. They specifically found in TRW that the fair credit, the FCRA, which I guess is the Fair Credit Reporting Act, that in that case it was, in fact, jurisdictional. And they ---- That act has a specific short time limit that's specified, does it not? It's not present in the FDCPA. I believe it is, and I believe that under the FDCPA you have a similar structure. And what the Supreme Court, I think the language was interesting there, that they said that the act does not govern an area of law that cries out for application of the discovery rule and suggests to the Ninth Circuit that when you're trying to decide whether this is jurisdictional or procedural, you should look for acts that cry out for the application of the discovery rule. And we would note that the eighth ---- Wasn't the problem there, though, that the statutes gave a specific instance in which, under which, there would be protection. And they said, look, when Congress has given you a specific instance, you can't go and say, oh, well, that doesn't make any difference. I can add a bunch of other stuff on to, other instances on to. It seems to me that was really the number they're holding. As to the rest of it, they said, we aren't saying we like it or don't like it. We're just keeping our hands off it now. And keeping our hands off it now means you follow Ninth Circuit law, doesn't it? I do believe that they did keep their hands off of it, although I think they were trying to be instructive to the Ninth Circuit. And certainly ---- They just keep trying and trying and trying. And certainly the FDCPA does specifically say ---- You know, you may want to shift to the client you do represent. Very well. I'd be happy to do that. Out of time. We appreciate your valor in representing a co-client here. Equity of orders of volunteer. Only because I thought I was instructed to do so by this Court in being prepared to address that issue. Very well. Well, the primary issue against the city, of course, is the privacy claim. And I think we also have some concern particularly about the applicability of the Fair Credit Reporting Act as against the city. So what's your thought on the privacy issue? Well, I believe that the district court made the proper decision that once you place a check into the stream of commerce, that there is no expectation of privacy. What the council seems to argue for the appellant in this case is that they seem to acknowledge that there is no right of privacy in a check when you put it into the course of commerce. Somehow that it's ---- Let me just ---- I'm just curious about that. Because the Fair Debt ---- the FDCPA clearly expresses a congressional view that this kind of information is only supposed to go to authorized parties. And if it ---- set the statute of limitations thing aside, you know, the debt collector violated that by turning it over to an unauthorized party. So how can you say that when somebody puts it in the stream of commerce, a check, which Congress has said ought not to be disclosed by a debt collection agency to unauthorized parties, that there's no reasonable expectation of privacy? There is a specific remedy provided for under the statute against that debt collection agency. Against the debt collection agency. Right. I understand that. But to say then when one looks at one's reasonable expectation of privacy, Congress, yes, may have identified who they can sue. But the question is, does that not at all inform the general 14th Amendment, First Amendment ---- I don't believe it. ---- bases for the, you know, expectation of privacy, which was in fact discussed in our recent opinion in the N.S.A. case. I don't believe it does because I don't believe this creates an inviolative right of privacy in a bad check because certainly that bad check can go to collection. And when they bring a cause of action in the court, they were ---- the city of Pocatello found most of these checks as a result of going to the courthouse, looking up cases. No, we're not talking about that. We're talking about him getting the information without disclosing that this was simply an administrative personnel action. And that's all that's at issue here, as I understand it. He did receive three or four additional checks in that fashion, but ---- And didn't the collection agencies say, boy, if we'd known what he was really doing, we wouldn't have turned it over? They said that at trial. They did not say that at the time that he came in and requested the checks. Well, that may be because they didn't know at the time that this wasn't a criminal investigation. So why doesn't that all build on the notion that even the debt collector knew that, but for an exercise of police authority, which was not properly invoked, this wasn't a search under the Fourth Amendment, presumably, that this violated an expectation of privacy? Well, I reached a different conclusion, that Congress intended to create an expectation of privacy. Not simply intended to create it. I'm saying they ---- well, they do as vis-a-vis the debt collector. And one of the ironies of this case, if you're right, which means that the debt collector will go to trial on whether it violated the Act, but the party that induced it to violate the Act is sitting on the sidelines free and clear. That is correct. Kind of ironic. Counsel, can I ask you, one of my colleagues is your opponent, a slight lifeline. Let's see if I can ask you this. Assuming that Congress fed in the hands of a collection agency, the agency shouldn't distribute it to others. How does that create a right of privacy in the check as such? The check also could have been handed, copies of it could have been made by the creditor and distributed to the world, I take it, and distributed to the police and handed to the police. And indeed, as I recall, in the bank case the Supreme Court had, the bank was subpoenaed to turn over checks. And that was the whole point, that a third person could get them. So I don't quite see how there's a general right of privacy created because the check happens to hit a debt collection agency. Well, in general. Is there a general right of privacy just because the debt collector now has it? Well, we've reached the — we believe that there is not such a general right of privacy that is created. And that is what I was suggesting to Judge Fischer, is that there is no separate right of privacy that is created or intended to be created by Congress as a general right of privacy in a bad check. Effectively, what one would have to conclude there is that, while there's no right of privacy clearly in a check that's placed in the stream of commerce, and there's no right of privacy if that check is published or distributed in some other fashion, but if you somehow give it to a debt collection agency, you now have created a general right of privacy that applies to the whole world. And that certainly seems to me to be quite a leap in logic and not clearly what was intended by Congress, that they were trying to make sure that people were fair who are in the special business of collecting debts. Congress didn't create any cause of action against third parties, did it? No, it did not. Thank you. Are there any other questions that any of you have? If not, I believe I'd be happy to submit the argument. Thank you. Thank you, counsel. I do have one question. With respect to the Fair Credit Reporting Act, what triggers the implementation of that act? It would be the giving out of a consumer report, a credit report. By whom? By one of the consumer reporting agencies. Okay. But in this case, it's a collection agency, is it not? Yes. In this case, there is no consumer report or an investigative report given to anyone, and there is no the collection agencies in this case are not credit bureaus. All right. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Fernandez, Fisher